William M. Hogg (State Bar No. 338196)
**LAUREL EMPLOYMENT LAW**
808 Wilshire Boulevard, Suite 200
Santa Monica, California 90401
Tel.: (323) 551-9221; Fax: (310) 564-4093
william@laurelemploymentlaw.com

*Attorneys for Olivieri & the Commissioned Employees*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

ROBERT OLIVIERI, Individually and for Others Similarly Situated,

Plaintiff,

vs.

PURAGAIN WATER, LLC,

Defendant.

Case No. '25CV3578 WQHSBC

**CLASS AND COLLECTIVE ACTION COMPLAINT:**

(1) Failure to Pay Minimum Wages Under the FLSA;
(2) Failure to Pay Overtime Wages Under the FLSA;
(3) Failure to Pay Overtime (Cal. Lab. Code § 510);
(4) Failure to Pay Minimum Wages (Cal. Lab. Code §§ 1182.12, 1194, 1197);
(5) Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Cal. Lab. Code §§ 226.7 and 512);
(6) Unlawful Deductions (Cal. Lab. Code §§ 221-224);
(7) Failure to Reimburse Business Expenses (Cal. Lab. Code § 2802);
(8) Failure to Pay Sick Leave (Cal. Lab. Code § 246);
(9) Failure to Provide Timely and Accurate Itemized Wage Statements (Cal. Lab. Code § 226);
(10) Waiting Time Penalties (Cal. Lab. Code §§ 201-203); and
(11) Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).

**Demand for Jury Trial**

Plaintiff Robert Olivieri ("Olivieri"), Individually and on behalf of others similarly situated, complains and alleges as follows:

## SUMMARY

1. Olivieri brings this class and collective action to recover unpaid wages, other damages, and restitution from Puragain Water, LLC ("Puragain").

2. Olivieri worked for Puragain as non-exempt water technician paid on a commission-only basis in the Los Angeles area.

3. Like the Commissioned Employees (defined below), Olivieri regularly worked more than 8 hours in a day and 40 hours in a week.

4. In fact, Olivieri and the other Commissioned Employees typically work 10 hours a day for up to 6 days a week.

5. But Puragain did not pay them overtime compensation for all overtime hours worked.

6. Instead, Puragain pays Olivieri and the other Commissioned Employee almost exclusively on a commission-only basis.

7. Puragain's commission-only pay scheme violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* by depriving these employees (Olivieri and the putative Collective Members) of overtime wages for all hours worked in excess of 8 hours in a day and/or 40 hours in a workweek.

8. On various occasions, Puragain also failed to pay Olivieri and the putative Collective Members minimum wages. Indeed, on at least one occasion, Puragain issued Olivieri with a wage statement showing $0.00 paid for 34.5 recorded hours worked.

9. Puragain's commission pay scheme also violates various provisions of the California Labor Code and applicable IWC Wage Orders by depriving these employees (Olivieri and the putative California Class Members) of overtime wages at 1.5 times their regular rates of pay for all hours worked in excess of 8 hours in a day and/or 40 hours in a workweek, and of double time wages for all hours worked in excess of 12 hours in a day.

10. Puragain's commission-only pay scheme also violates California's minimum wage statutes because, on various workweeks, the commissions Olivieri and the California Class Members earned, when divided by the total number of hours worked in that week, amount to hourly rates of pay less than $16.50 per hour.

11. Further, in addition to failing to pay Olivieri and the California Class Members overtime wages, Puragain also fails to provide these employees with compliant meal and rest periods.

12. Instead, Puragain requires these employees to remain on-duty and to perform work throughout their shifts and fails to provide them with *bona fide*, timely, and compliant meal and rest periods.

13. Despite depriving Olivieri and California Class Members of their required meal and rest periods, Puragain does not pay these employees the required premium pay for each denied meal and rest period in violation of California law.

14. Puragain likewise applies deductions to Olivieri's and the California Class Members' wages, categorized as "PREPAY," which are not authorized or sanctioned by the employees in violation of California Labor Code §§ 221-224.

15. Puragain also requires Olivieri and the other California Class Members to purchase various items to perform their jobs, including requiring them to use their personal vehicle for work-related travel without mileage reimbursement, use their personal cell phones and data plans for work, and purchase other supplies like chlorine testers and a measuring wheel.

16. Puragain does not reimburse Olivieri and the other California Class Members for these necessary business expenses in violation of California Labor Code § 2802,

17. Puragain also fails to pay sick leave to Olivieri and the other California Class Members, nor does Puragain have a policy of sick pay accrual that complies with California law.

18. Puragain likewise fails to provide timely, accurate, and compliant wage statements to Olivieri and California Class Members in violation of California law.

19. The above California state-law violations constitute unlawful, unfair, and fraudulent business acts and practices under California Business & Professions Code §§ 17200, *et seq.*, entitling Olivieri and the other Commissioned Employees to restitution, injunctive relief, and all available legal and equitable remedies.

## JURISDICTION & VENUE

20. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

21. The Court has supplemental jurisdiction over the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

22. This Court has general personal jurisdiction over Puragain because Puragain is a California limited liability corporation which maintains principal place of business in Escondido, San Diego County, California.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Puragain resides in this District.

## **PARTIES**

24. Olivieri was employed by Puragain as a non-exempt water technician in the Los Angeles County area from approximately March 2025 to August 2025.

25. Throughout his employment, Puragain paid Olivieri on a commission-only basis with no daily or weekly overtime compensation.

26. Olivieri was paid on a commission rate of approximately $400-to-$450 per sale.

27. On average, Olivieri worked 10 hours per day, 6 days per week during his employment with Puragain.

28. On certain weeks, Puragain paid Olivieri amounts that, when divided by the total number of hours worked, were less than the minimum wage rate under California law.

29. Puragain also applied unauthorized deductions to Olivieri's pay on certain pay periods, including deductions categorized as "PREPAY."

30. Throughout his employment, Puragain failed to provide Olivieri with compliant meal and rest periods and failed to pay him the required premium pay for each meal and rest period Puragain denied him.

31. After 30 days of his employment, Puragain failed to provide sick pay accrual to Olivieri, and likewise failed to pay him for his sick pay at the end of his employment.

32. Puragain also required Olivieri to incur various expenses, including expenses related to the use of his personal vehicle, use of his personal cell phone and data plan, and purchase of other supplies such as chlorine testers and a measuring wheel.

33. Puragain did not reimburse Olivieri for these necessary business expenditures.

34. Throughout his employment, Puragain failed to provide Olivieri with accurate or compliant itemized wage statements.

35. The wage statements Olivieri received failed to state all wages owed, all premium payments owed, and all hours worked.

36. Olivieri brings this Action on behalf of himself and other similarly situated water technicians paid on a commission basis with no overtime compensation.

37. Olivieri's written consent to join this collective action is attached as **Exhibit 1**.

38. Puragain uniformly failed to pay these employees overtime compensation in violation of the FLSA and California wage laws.

39. Likewise, Puragain fails to pay Olivieri and the California Class Members all minimum wages owed under California law.

40. Likewise, Puragain uniformly deprives these employees of compliant meal and rest periods but fails to pay Olivieri and the California Class Members the requisite premium pay for each meal and rest period Puragain denies them in violation of California wage and hour law.

41. Purgain also fails to provide Olivieri and the California Class Members with accurate and compliant itemized wage statements.

42. Puragain also applies unauthorized deductions to Olivieri's and the California Class Members' wages.

43. The proposed FLSA Collective of similarly situated employees is defined as:

> **All current and former water technicians employed by Puragain in the United States who were paid on a commission basis with no overtime compensation at any time from three (3) years before the filing of this Complaint through final resolution of this Action (the "Collective Members").**

44. Olivieri also seeks to represent a class and/or sub-class(es), as may be appropriate, pursuant to Federal Rule of Civil Procedure 23 with respect to his state law causes of action.

45. The proposed Class of similarly situated employees is defined as:

> **All current and former water technicians employed by Puragain in California who were paid on a commission basis with no overtime compensation at any time from four (4) years before the filing of this Complaint through final resolution of this Action (the "California Class Members").**

46. The Collective Members and California Class Members are collectively referred to as the "Commissioned Employees."

47. Puragain is a California limited liability corporation that maintains its principal place of business in San Diego County, California.

48. Puragain may be served with process by serving its registered agent: **Pamela Larson, 1330 Loma De Paz, Escondido, California 92027**.

## FLSA COVERAGE

49. At all relevant times, Puragain was an employer within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

50. At all relevant times, Puragain was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

51. At all relevant times, Puragain was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA. 29 U.S.C. § 203(s)(1).

52. At all relevant times, Puragain has had an annual gross business volume of not less than $500,000 each year.

53. At all relevant times, Puragain has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as water filtration systems, computers, and cell phones.

54. At all relevant times, Olivieri and the putative Collective Members were engaged in commerce or in the production of goods for commerce.

55. Puragain uniformly pays Olivieri and the Collective Members on a commission basis with no overtime compensation.

56. Puragain's commission-with-no-overtime pay scheme deprives Olivieri and the putative Collective Members of overtime compensation when they work more than 40 hours in a workweek, is a violation of the FLSA, 29 U.S.C. § 207(a) & (e).

57. Puragain also occasionally pays Olivieri and the Collective Members less than the required minimum wage under the FLSA during certain workweeks.

## FACTUAL ALLEGATIONS

58. Puragain is a water filtration systems installer and maintenance-provider which provides water filtration systems to residences in Southern California, Las Vegas, Arizona, Texas, and Florida.

59. Puragain offers water testing services and residential water filtration installation and maintenance services to its customers.

60. Puragain maintains storefronts in (i) Escondido, California, (ii) Walnut, California, (iii) Oxnard, California, (iv) Las Vegas, Nevada, (v) Phoenix, Arizona, (vi) Tucson, Arizona, (vii) Prescott, Arizona, (viii) Houston, Texas, (ix) Dallas, Texas, (x) Austin, Texas, (xi) San Antonio, Texas, (xii) Tampa, Florida, and (xiii) Orlando, Florida.[1]

61. In order to provide the water testing and filtration services to its customers across the country, Puragain hires technicians and non-exempt employees like Olivieri and the Commissioned Employees.

[1] https://www.puragainwater.com/contact-us/#locations (last visited Dec. 8, 2025).

62. Puragain pays Olivieri and the Commissioned Employees on a commission basis with no overtime compensation.

63. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

64. For example, Olivieri worked for Puragain as a non-exempt water technician in the Los Angeles area from approximately March 2025 through August 2025.

65. Throughout his employment, Puragain paid Olivieri on a commission basis with no overtime compensation.

66. Olivieri's job duties were not exempt in nature.

67. Rather, Olivieri's primary job duties consisted of driving to appointments with Puragain's customers, testing the customers' water, and showing the customer the water report, and assisting the customers if they wanted to purchase a Puragain water system after the water test.

68. Olivieri's primary job duties were to test customers' water and show them the water report.

69. Olivieri and the other Commissioned Employees worked under Puragain's uniform commission with no overtime pay scheme.

70. As water technicians and others with similar job duties, Olivieri and the other Commissioned Employees primarily perform non-exempt job duties including performing water testing and explaining the water test results with Puragain's customers.

71. While Olivieri and the other Commissioned Employees sometimes assist Puragain's customers with purchasing water filtration systems after their water testing presentations, their primary job duty is not making sales as defined in the FLSA. Their primary job duties, as water technicians, are to test the customers' water and show them the results.

72. With these job duties, Olivieri and the other Commissioned Employees are clearly non-exempt employees under the FLSA and California wage laws and, therefore, entitled to overtime compensation.

73. But Puragain does not pay Olivieri and the putative Collective Members overtime compensation when they work in excess of 40 hours in a workweek in violation of the FLSA.

74. Likewise, Puragain does not pay Olivieri and the California Class Members overtime compensation when they work in excess of 8 hours in a day and/or in excess of 40 hours in a workweek in violation of California wage laws.

75. This is despite Olivieri and the other Commissioned Employees regularly working 10 hours a day for 6 days a week.

76. Olivieri worked more than 8 hours in a least one workday during the four years before this Complaint was filed.

77. For example, during the pay period of August 3 to August 16, 2025, Olivieri worked at least 120 recorded hours. During this time period, Olivieri worked approximately 10 hours per day, 6 days per week.

78. Puragain's business records readily show the actual number of hours worked by Olivieri and the Commissioned Employees, because Puragain tracks the appointments, knows the appointment locations (and therefore the average travel time to each appointment), and maintains time-stamped work activity for these workers.

79. Likewise, each putative California Class Member worked more than 8 hours in at least one workday during the four years before this Complaint was filed.

80. Olivieri worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

81. For example, during the pay period of August 3 to August 16, 2025, Olivieri worked at least 120 recorded hours. During this time period, Olivieri worked approximately 60 hours per week.

82. Likewise, each putative Collective Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

83. Olivieri, however, was not paid time-and-a-half for the (at least) 20 hours beyond 40 which he worked during the week of August 3 to August 16, 2025.

84. Olivieri was likewise not paid time-and-a-half for his hours worked over 8 each workday that he worked during the week of August 3 to August 16, 2025.

85. Instead, Olivieri was paid a total of $1,1980.00 during the two-week period of August 3 to August 16, 2025, equaling $16.50 per hour for all hours worked. His rate of pay did not increase when he worked over 8 hours in a day or 40 hours in the week.

86. As another example, during the two-week pay period of June 22 to July 5, 2025, Olivieri was paid a total of $0.00 despite 34.50 documented hours worked.

87. Instead, Puragain applied a deduction labeled as "PREPAY" which deducted $518.88 from Olivieri's pay for that pay period.

88. Olivieri's net pay for the pay period of June 22 to July 5, 2025 was supposed to be $518.88, which was reduced to $0.00 following Puragain's application of the "PREPAY" deduction.

89. Upon information and belief, the "PREPAY" deduction is not a salary advance, but is simply a deduction from wages.

90. Olivieri was likewise denied, and was prevented from taking, a 30-minute meal period within the first 5 hours of work during each workday of the weeks of June 22 to July 5, 2025, as well as August 3 to August 16, 2025.

91. And Olivieri was denied, and was prevented from taking, a second 30-minute meal period during his workdays in which he worked at least 10 hours during the weeks of June 22 to July 5, 2025, as well as August 3 to August 16, 2025.

92. Olivieri was also denied, and was prevented from taking, a 10-minute rest period for every 4 hours of work each workday during the weeks of June 22 to July 5, 2025, as well as August 3 to August 16, 2025.

93. Despite being denied timely or compliant meal and rest periods each workday during the weeks of June 22 to July 5, 2025, as well as August 3 to August 16, 2025, Puragain did not pay Olivieri the required premium pay.

94. Puragain does not pay these employees overtime compensation.

95. Rather, under Puragain's uniform commission with no overtime pay scheme, Olivieri and the other Commissioned Employees are denied overtime compensation when they work in excess of 40 hours in a week in violation of the FLSA.

96. Likewise, under Puragain's commission-based pay scheme, Olivieri and the other Commissioned Employees are sometimes denied minimum wages for all hours worked in violation of the FLSA.

97. Under Puragain's uniform commission with no overtime pay scheme, Olivieri and the California Class Members are denied overtime compensation when they work in excess of 8 hours in a day and/or 40 hours in a week in violation of the California Labor Code.

98. Likewise, under Puragain's uniform commission-based pay scheme, Olivieri and the California Class Members are sometimes denied minimum wages for all hours worked in violation of the California Labor Code.

99. Purgain knows Olivieri and the other Commissioned Employees routinely work more than 8 hours in a day, and often work 10 or more hours in a day, because Puragain expects and requires these employees to do so.

100. Puragain is also provided constructive notice that Olivieri and the other Commissioned Employees work such long hours, because Puragain maintains standard schedules, driving logs, customer addresses, and other objective data from which it can tell the hours Olivieri and the other Commissioned Employees perform compensable work.

101. But Puragain does not pay Olivieri and the other Commissioned Employees overtime wages for the overtime hours they work in a day or week in violation of the FLSA and/or California wage laws.

102. When Olivieri and the California Class Members work more than 8 hours in a workday, Puragain does not pay then 1.5 times their regular hourly rate for all overtime hours worked.

103. In addition to depriving Olivieri and the California Class Members of overtime wages, Puragain also fails to provide Olivieri and the California Class Members with compliant meal and rest periods.

104. Instead, Puragain requires Olivieri and the California Class Members to work continuously throughout their shifts, and these employees are never fully relieved of all their duties for 30 consecutive minutes.

105. Puragain expects and requires California Class Members, including Olivieri, to be available to work during their entire shifts, even during any attempted meal and rest breaks.

106. Puragain fails to pay Olivieri and the California Class Members premium wages for their missed breaks in violation of California law.

107. Puragain also forces Olivieri and the other California Class Members to incur various expenses necessary to do their jobs, such as requiring them to use their personal vehicles for work purposes, use their cell phones and data plans for work, and to purchase supplies.

108. Puragain, however, does not reimburse Olivieri and the other California Class Members for their necessary business expenditures.

109. Puragain fails to pay sick leave to Olivieri and the other California Class Members who worked more than 30 days for Puragain.

110. The wage statements provided to Olivieri and the other California Class Members do not state any paid sick leave has been accrued.

111. Upon information and belief, Puragain did not have a different accrual method as that prescribed by California Labor Code § 246(b).

112. Upon separation of employment, Puragain does not pay Olivieri and the other California Class Members the dollar value of sick leave that should have been accrued under California law.

113. Puragain also does not provide Olivieri and the California Class Members with accurate itemized wage statements as required by California law.

114. The wage statements provided to Olivieri and the California Class Members are not accurate because they do not reflect the actual hours worked, overtime wages earned, gross wages earned, or net wages earned.

115. As a result of Puragain's illegal pay schemes and practices, Olivieri and the California Class Members who are former employees are not paid all wages owed at the end of their employment.

116. As a result of Puragain's illegal pay scheme and failure to properly implement a time-tracking system, the wage statements provided by Puragain do not contain accurate number of hours worked, and do not accurately reflect the actual gross wages earned, overtime wages earned, premium pay earned, and/or actual net wages earned.

117. Puragain knew, or should have known, it was subject to the FLSA and California wage laws, including their respective minimum wage and overtime provisions.

118. Puragain knew, or should have known, the FLSA and California wage laws require it to pay employees, including Olivieri and the other Commissioned Employees, at least the minimum wage for all hours worked up to 40 in a week or up to 8 in a day.

119. Puragain knew, or should have known, the FLSA and California wage laws require it to pay employees, including Olivieri and the other Commissioned Employees, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

120. Puragain knew, or should have known, California wage laws require it to pay employees, including Olivieri and the California Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 8 hours in a workday and double time wages at rates not less than 2 times these employees' regular rates of pay for all hours worked in excess of 12 hours in a workday.

121. Puragain knew, or should have known, Olivieri and the California Class Members worked more than 8 hours in a day because Puragain expected and required them to do so.

122. Puragain knew, or should have known, Olivieri and the other Commissioned Employees worked more than 40 hours in a week because Puragain expected and required them to do so.

123. Puragain also had constructive knowledge of the actual hours Olivieri and the other Commissioned Employees worked each workday and workweek because it knew the customer schedules, the average travel distance and times between work locations, and otherwise had access to time-stamped work activity indicating the beginning and end of the employees' workdays.

124. Puragain knew, or should have known, Olivieri and the other Commissioned Employees were non-exempt employees and, therefore, entitled to minimum wages and overtime compensation.

125. Puragain knew, or should have known, California wage laws require it to provide California employees, including Olivieri and the California Class Members, a 30-minute meal period when they work more than 5 hours in a day, as well as a second 30-minute meal period when they work more than 10 hours in a day.

126. Puragain knew, or should have known, Olivieri and the California Class Members work continuously throughout their shifts and are deprived of compliant *bona fide* meal periods.

127. Puragain knew, or should have known, California wage laws require it to provide California employees, including Olivieri and the California Class Members, a 10-minute rest period for every 4 hours of work.

128. Puragain knew, or should have known, California wage laws require it to pay California employees, including Olivieri and the California Class Members, one hour of premium pay at their regular rates of pay for each workday that a compliant meal and/or rest period is not timely provided.

129. Puragain knowingly, willfully, and/or in reckless disregard carried out these illegal policies and practices that deprived Olivieri and the other Commissioned Employees of overtime compensation and/or meal and rest period premium pay in violation of the FLSA and/or California wage laws.

130. Nonetheless, Puragain failed to pay Olivieri and the other Commissioned Employees overtime compensation for all hours worked.

131. And, occasionally, Puragain failed to pay Olivieri and the Commissioned Employees at the requisite minimum wage rates for all hours worked.

132. Likewise, Puragain failed to pay Olivieri and the California Class Members premium pay for the meal and rest periods Puragain illegally denied them.

133. Puragain's common course of wage-and-hour abuse includes routinely failing to maintain true and accurate records of the hours worked by Olivieri and the other Commissioned Employees.

134. In particular, Puragain consistently failed to record and maintain hours that Olivieri and the other Commissioned Employees worked during their shifts due to Puragain's commission-based pay scheme, as well as during missed meal and rest periods.

135. Puragain's failure to pay Olivieri and the other Commissioned Employees minimum wages and overtime pay was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

136. Likewise, Puragain's failure to pay Olivieri and the California Class Members premium pay for the missed meal/rest periods was neither reasonable, nor was the decision not to pay these employees premium pay for their denied meal/rest

periods made in good faith.

137. Further, Puragain did not provide Olivieri and California Class Members with full payment of all wages owed at the end of employment.

138. As these workers are owed for unpaid overtime wages and premium wages when their employment ends, and these amounts remain unpaid under Puragain's policies and practices, Puragain fails to pay all wages due upon termination. As a consequent, Puragain is subject to waiting time penalties.

139. Puragain's violations of the FLSA and California wage laws was willful, carried out in bad faith, and caused significant damages to these workers.

## FLSA Collective Action Allegations

140. Olivieri brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

141. Per 29 U.S.C. § 216(b), this Action may be brought as an "opt-in" collective action for the FLSA claims asserted by Olivieri because his claims are similar to the claims possessed by the Collective Members.

142. The putative Collective Members were uniformly victimized by Puragain's illegal misclassification and salary with no overtime pay scheme, which are in willful violation of the FLSA.

143. Other putative Collective Members worked with Olivieri and indicated they were paid in the same manner and were subject to Puragain's same illegal policies.

144. Based on his experiences with Puragain, Olivieri is aware Puragain's illegal practices were imposed on the putative Collective Members.

145. The putative Collective Members are similarly situated in all relevant respects.

146. Even if the precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

147. Therefore, the specific job titles or precise job locations of the various members of the putative Collective do not prevent collective treatment.

148. Rather, the putative Collective is held together by Puragain's uniform salary with no overtime pay scheme that systematically deprived Olivieri and the putative Collective Members of overtime wages when they worked more than 40 hours in a week.

149. The proposed Collective Members are defined, *supra*, at Paragraph 43.

150. The putative Collective Members perform or have performed the same or similar job duties with Puragain as Olivieri.

151. The putative Collective Members regularly work or have worked more than 40 hours during a workweek during their employment with PURAGAIN.

152. The putative Collective Members are similarly subject to a commission-based pay scheme, like Olivieri.

153. The putative Collective Members, occasionally, were paid less than $7.25 per hour for all recorded hours worked.

154. Puragain's failure to pay minimum wages and overtime compensation as required by the FLSA resulted from generally applicable policies and practices, and does not depend on the personal circumstances of the Collective Members.

155. Olivieri's and putative Collective Members' claims arise from a common nucleus of operative facts; namely, Puragain's commission-based pay scheme.

156. Puragain's FLSA liability is based on a systematic course of wrongful conduct that caused harm to all putative Collective Members.

157. Puragain had a plan, policy or practice of paying technicians like Olivieri and the putative Collective Members on a commission-only basis without overtime and thereby failing to pay those workers overtime wages when they worked in excess of 40 hours in a workweek.

158. Likewise, Puragain's commission-based pay system sometimes resulted in Olivieri and the putative Collective Members being paid less than $7.25 per hour worked during certain workweeks.

159. As such, the Collective of similarly situated potential plaintiffs is properly defined as stated *supra*, at Paragraph 43.

160. The precise number of putative Collective Members, as well as their names and contact information, is readily available and identifiable from Puragain's personnel and payroll records.

## Rule 23 Class Action Allegations

161. Olivieri brings his California wage-and-hour claims and/or his claim under the Business and Professions Code §§ 17200, *et seq.*, as a class action pursuant to Federal Rule of Civil Procedure 23.

162. The proposed class and/or any subclass(es) are maintainable pursuant to Fed. R. Civ. P. 23(a), as well as Fed. R. Civ. P. 23(b)(1) and/or (b)(3).

163. The putative California Class Members were uniformly victimized by Puragain's illegal commission-based pay scheme, which are in willful violation of California law.

164. The putative California Class is properly defined *supra*, at Paragraph 45.

165. This Action has been brought and may properly be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed California Class is easily ascertainable.

166. Olivieri is informed and believes that the number of potential California Class Members exceeds 50.

167. This volume makes bringing the claims of each individual member of the California Class impracticable.

168. Likewise, joining each individual member of the California Class as a plaintiff in this action is impracticable.

169. The identities of the California Class will be determined from Puragain's records, as will the compensation paid to each of them.

170. As such, a class action is a reasonable and practical means of resolving these claims.

171. To require individual actions would prejudice both the California Class Members and Puragain.

172. There are questions of law and fact common to Olivieri and the California Class Members that predominate over any questions affecting only individual members of the California Class.

173. These common questions of law and fact include, but are not limited to:

a. Whether Puragain paid Olivieri and the California Class Members on a commission basis;

b. Whether Puragain accurately tracked, recorded, and maintained Olivieri's and the California Class Members' hours worked;

c. Whether Olivieri and the California Class Members performed primarily non-exempt job duties;

d. Whether Puragain engaged in a policy or practice of failing to pay Olivieri and the California Class Members at least the minimum wage for all hours worked in violation of California law

e. Whether Puragain engaged in a policy or practice of failing to pay Olivieri and the California Class Members overtime wages, at either one and one-half times or double the regular rate of pay, in violation of California law;

f. Whether Puragain failed to authorize and permit, make available, and/or provide Olivieri and California Class Members with timely meal and rest periods which they are entitled in violation of California law;

g. Whether Puragain failed to pay Olivieri and the California Class Members the requisite premium pay for each workday that a meal and/or rest period was denied in violation of California law;

h. Whether Puragain failed to provide Olivieri and the California Class Members with timely, accurate and compliant itemized wage statements in violation of California law;

i. Whether Puragain failed to timely pay Olivieri and the California Class Members for all wages owed upon termination of employment in violation of California law;

j. Whether Puragain failed to accrue sick pay leave for Olivieri and the California Class Members;

k. Whether Puragain failed to furnish sick pay to Olivieri and the California Class Members;

l. Whether Puragain's violations of the California wage laws resulting from a continuing course of conduct;

m. Whether Puragain required Olivieri and the California Class Members to expend money for necessary business items without reimbursement;

n. Whether Puragain's decision to not pay Olivieri and the California Class Members overtime compensation was made in good faith;

o. Whether Puragain's violations of the California wage laws were willful and knowing;

p. The proper formula for calculating restitution, damages and penalties owed to Olivieri and the California Class as alleged herein;

q. Whether Puragain violated the Business and Professions Code §§ 17200 *et seq.* by:

i. Failing to properly pay minimum wage compensation to California Class Members;

ii. Failing to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to California Class Members;

iii. Failing to authorize and permit, make available, and/or provide California Class Members with timely meal and rest periods to which they are entitled;

iv. Failing to pay premium pay penalties to California Class Members for meal and rest period violations;

v. Failing to reimburse California Class Members for all necessary business expenditures;

vi. Failing to provide sick pay to California Class Members;

vii. Failing to provide California Class Members with timely, accurate itemized wage statements; and

viii. Failing to pay California Class Members for all wages upon termination of employment

174. Olivieri's claims are typical of the California Class Members' claims.

175. Puragain's common course of conduct in violation of California law as alleged herein caused Olivieri and the California Class Members to sustain the same or similar types of injuries and damages.

176. Olivieri's claims are thereby representative of and co-extensive with the claims of the putative California Class.

177. Olivieri seeks relief for California state law violations perpetrated by Puragain. In that sense, Olivieri does not have any conflicts of interest with other California Class Members and will prosecute the vase vigorously on behalf of the Class.

178. Counsel representing Olivieri is competent and experienced in litigating complex cases and large class actions, including wage and hour cases.

179. Olivieri will fairly and adequately represent and protect the interests of the California Class Members.

180. A class action is superior to other available means for the fair and efficient adjudication of this controversy.

181. Individual joinder of all proposed California Class Members is not practicable, and questions of law and fact common to the California Class predominate over any questions affecting only individual California Class Members.

182. Each proposed California Class Members has been damaged and is entitled to recovery by reason of Puragain's illegal policies and/or practices.

183. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties

and the judicial system.

184. Alternatively, the California Class may be certified because the prosecution of separate actions by the individual members of the California Class would create a risk of inconsistent or varying adjudication with respect to individual members of the California Class which would establish incompatible standards of conduct for Puragain.

185. If each individual California Class Member were required to file an individual lawsuit, Puragain would necessarily gain an unconscionable advantage because Puragain would be able to exploit and overwhelm the limited resources of each California Class Member with Puragain's vastly superior financial legal resources.

186. Requiring each individual California Class Member to pursue an individual remedy would also discourage the assertion of lawful claims by the California Class Members who would be disinclined to pursue these claims against Puragain because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers, and well-being.

187. The proposed California Class Members may properly receive notice of the class action by mail, email, and/or by text message, and the contact information needed to facilitate such notice is readily ascertainable from Puragain's personnel records.

## COUNT I
## Failure to Pay Minimum Wages Under the FLSA
## (FLSA Collective Action)

188. Olivieri realleges and incorporates all other paragraphs by reference.

189. Olivieri brings his FLSA minimum wage claims as a collective action pursuant to 29 U.S.C. § 216(b).

190. This count arises from Puragain's violation of the FLSA in connection with its failure to pay the minimum wage. *See* 29 U.S.C. § 206.

191. Puragain paid Olivieri and the Collective Members amounts in certain workweeks which, when divided by the total number of hours worked in those weeks, were less than the minimum wage of $7.25 per hour.

192. Olivieri and the Collective Members are not exempt from the minimum wage requirements under the FLSA.

193. Puragain's failure to comply with the minimum wage requirements of the FLSA resulted in Olivieri and the Collective Members being paid less than the Federal minimum wage rate for all hours worked.

194. Puragain's failure to pay the minimum wage to Olivieri and the Collective Members, in violation of the FLSA, was willful and not based on a good faith belief that its conduct did not violate the FLSA. 29 U.S.C. § 255(a).

195. Accordingly, Olivieri and the Collective Members are entitled to minimum wages under the FLSA in an amount equal to at least $7.25 per hour for all hours worked, less the wages actually paid, plus liquidated damages, attorneys' fees, costs, and post-judgment interest

## COUNT II
## Failure to Pay Overtime Under the FLSA
## (FLSA Collective Action)

196. Olivieri realleges and incorporates all other paragraphs by reference.

197. Olivieri brings his FLSA overtime claim as a collective action pursuant to 29 U.S.C. § 216(b).

198. Puragain has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing non-exempt employees (Olivieri and the Collective Members) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their work in excess of 40 hours per week at rates of not less than 1.5 times their regular rates of pay.

199. Puragain knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Olivieri and the Collective Members overtime compensation.

200. Puragain's failure to pay Olivieri and the Collective Members overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

201. Accordingly, Olivieri and the Collective Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay for all overtime hours worked, plus liquidated damages, attorneys' fees, costs, and post-judgment interest.

## Count III
## Failure to Pay Overtime Under Cal. Labor Code § 510
## (Rule 23 Class Action)

202. Olivieri realleges and incorporates all other paragraphs by reference.

203. Olivieri brings his overtime claim under the California Labor Code and Wage Order(s) as a Rule 23 class action.

204. At all relevant time, Puragain was Olivieri's and California Class Members' "employer" within the meaning prescribed in the Labor Code.

205. At all relevant times, Puragain was subject to the Labor Code and applicable Wage Orders.

206. Labor Code § 510(a) provides as follows:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

207. IWC Wage Order 4-2001(3)(A)(1), & (3) states that employees:

> … shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

208. Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

209. Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Order.

210. Despite regularly working over 8 hours a day and/or 40 hours in a workweek as part of their normal and regular schedules, Olivieri and the California Class Members did not receive overtime compensation for all overtime hours worked.

211. Despite occasionally working over 12 hours a day with Puragain's knowledge of such work, Olivieri and the California Class Members did not receive double time compensation for such hours worked.

212. Puragain's pattern, practice, and uniform administration of corporate policy and practices regarding illegal employee compensation is unlawful and entitles Olivieri and the California Class Members to recover the unpaid balance of the full amount of overtime wages owed, including 1.5 times and double time wages, an equal amount as liquidated damages, interest at the highest applicable rates, and attorneys' fees and costs.

## COUNT IV
**Failure to Pay Minimum Wages**
**Under Cal. Labor Code §§ 1182.12, 1194, 1197**
**(Rule 23 Class Action)**

213. Olivieri realleges and incorporates all other paragraphs by reference.

214. Olivieri brings his minimum wage claim under the California Labor Code and Wage Order(s) as a Rule 23 class action.

215. At all relevant times, Puragain was subject to the California Labor Code and applicable IWC Wage Order(s) because Puragain is considered an "employer" within the meaning of the California Labor Code and applicable IWC Wage Order(s).

216. At all relevant times, Puragain employed Olivieri and the California Class Members as its covered "employees" within the meaning prescribed by the California Labor Code and applicable IWC Wage Order(s).

217. During the relevant time period, Labor Code §§ 1182.12 and 1197, and the applicable Minimum Wage Order, were in full force and effect and required that Puragain's non-exempt employees receive the minimum wage for all hours worked at the following rates:

a. January 1, 2021 to December 31, 2021: $13.00 per hour;
b. January 1, 2022 to December 31, 2022: $14.00 per hour;
c. January 1, 2023 to December 31, 2023: $15.00 per hour;
d. January 1, 2024 to December 31, 2024: $16.00 per hour; and
e. January 1, 2025 to December 31, 2025: $16.50 per hour.

218. Puragain maintained policies and procedures which create a working environment where hourly employees such as Olivieri and the other California Class Members are occasionally compensated at a rate that is less than the statutory

minimum wage.

219. For periods of time during the relevant time period, Puragain failed to pay Olivieri and the other California Class Members at the requisite minimum wage for all hours worked.

220. For example, there are numerous workweeks in which the total remuneration earned, when divided by the total hours worked, resulted in Olivieri earning less than the minimum wage.

221. Indeed, there are a number of workweeks in which Olivieri worked recorded hours but took home $0.00 in pay.

222. Upon information and belief, Puragain likewise paid the other California Class Members a similar substandard wage, at least for certain workweeks.

223. As a direct and proximate result of the unlawful acts and/or omissions of Puragain, Olivieri and the other California Class Members have been deprived of minimum wages in an amount to be determined at trial.

224. Olivieri and the other California Class Members are entitled to recover the difference between the statutory minimum wages owed to them and the substandard wages actually paid to them, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit.

## Count V
## Failure to Authorize, Permit, and/or Make Available Meal and Rest Periods Pursuant to Cal. Labor Code §§ 226.7 and 512 (Rule 23 Class Action)

225. Olivieri realleges and incorporates all other paragraphs by reference.

226. Olivieri brings his meal and rest period claim under the California Labor Code and Wage Order(s) as a Rule 23 class action.

227. Puragain routinely does not make meal periods available to Olivieri and the California Class Members.

228. Despite long days regularly lasting in excess of 8, 10, and sometimes 12 hours, Olivieri and the California Class Members are often unable to take a meal break, are often prevented from timely taking a meal break, are otherwise subject to interruption during their meal breaks, and are frequently interrupted during their attempted meal breaks.

229. Olivieri and California Class Members are not paid one hour of premium pay for the missed breaks as required by California law.

230. Similar to meal periods, Puragain regularly fails to make rest periods available to Olivieri and the California Class Members. When available, if ever, the rest periods are often not compliant. Instead, the rest periods are generally untimely or short.

231. Olivieri and the California Class Members do not receive premium pay for their missed rest periods as required by California law.

232. Labor Code §§ 226.7 and 512, and the applicable Wage Orders, require Puragain to authorize and permit meal and rest periods to their employees.

233. Labor Code §§ 226.7 and 512, and the applicable Wage Orders, prohibit

employers like Puragain from employing an employee for more than 5 hours without a meal period of not less than 30 minutes, and from employing an employee more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes.

234. Labor Code § 226.7, and the applicable Wage Orders, also requires employers like Puragain to authorize and permit employees to take 10 minutes of net rest time per 4 hours (or major fraction thereof) of work, and to pay employees their full wages during those rest periods.

235. Unless the employee is relieved of all duty during the 30-minute meal period and the 10-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable Wage Orders.

236. Under Labor Code § 226.7(b), and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee 1 hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized or permitted.

237. Similarly, an employer must pay an employee denied a required rest period 1 hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized, permitted, and/or not made available.

238. Despite these statutory requirements, Puragain has knowingly and willfully refused to perform its obligations to authorize, permit, and/or make available to Olivieri and California Class Members the ability to take the off-duty meal and rest periods to which they are entitled.

239. Puragain has also failed to pay Olivieri and the California Class Members 1 hour of pay for each off-duty meal and/or rest period that they are denied.

240. As a proximate result of the aforementioned violations, Olivieri and the California Class Members have been damages in an amount according to proof at time of trial.

241. Puragain's conduct described herein violates Labor Code §§ 226.7 and 512.

242. Pursuant to Labor Code § 226.7(b), Olivieri and the California Class are entitled to compensation for Puragain's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

## Count VI
## Unlawful Deductions from Wages Pursuant to Cal. Labor Code §§ 221-224
## (Rule 23 Class Action)

243. Olivieri realleges and incorporates all other paragraphs by reference.

244. Olivieri brings his unlawful deductions claim under the California Labor Code and IWC Wage Order(s) as a Rule 23 class action.

245. At all relevant times, Labor Code §§ 221-224 were in full force and effect, and were binding on Puragain.

246. These statutes prohibit employers, like Puragain, from making deductions from wages unless specifically authorized by law or by the employee in writing.

247. Throughout the relevant time period, Puragain occasionally made unauthorized deductions from Olivieri's and other California Class Members'

earned wages without legal authorization or written employee consent.

248. Puragain often labeled these deductions as "PREPAY."

249. These "PREPAY" deductions would often result in eliminating Olivieri's and, upon information and belief, other California Class Members', earned wages for a given pay period, resulting in $0.00 take-home pay.

250. These deductions were made without Olivieri's and the other California Class Members' written authorization and without valid legal basis, constituting willful violations of Labor Code §§ 221-224.

251. Puragain's unlawful deductions were systematic and intentional.

252. As a direct and proximate result of Puragain's unlawful conduct, Olivieri and the other California Class Members suffered and continue to suffer substantial losses in wages and other employment benefits, all in an amount to be established at trial.

## Count VII
**Failure to Reimburse Necessary Business Expenses**
**Pursuant to Cal. Labor Code § 2802**
**(Rule 23 Class Action)**

253. Olivieri realleges and incorporates all other paragraphs by reference.

254. Olivieri brings his expense reimbursement claim under the California Labor Code and applicable IWC Wage Order(s) as a Rule 23 class action.

255. At all relevant times, Puragain was subject to the California Labor Code and applicable IWC Wage Order(s) because Puragain is considered an "employer" within the meaning of the Labor Code and applicable IWC Wage Order(s).

256. At all relevant times, Puragain employed Olivieri and the other

California Class Members as its covered "employees" within the meaning prescribed by the California Labor Code and applicable IWC Wage Order(s).

257. Puragain does not reimburse Olivieri and the other California Class Members for all necessary business expenditures.

258. Labor Code § 2802 provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary business expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

259. Puragain required Olivieri and the other California Class Members to use their personal vehicles to visit customers' homes, use their personal cell phones and data plans to perform their jobs, and to purchase various supplies, such as chloring testers.

260. Puragain is and was aware that Olivieri and the other California Class Members incur these business expenses and yet does not reimburse Olivieri and the other California Class Members for their mileage, cost of use of their cell phones/data plans, or purchases of supplies.

261. Puragain is liable to Olivieri and the other California Class Members for the unreimbursed expenses and civil penalties, with interest thereon.

262. Olivieri and the other California Class Members are further entitled to an award of attorneys' fees and costs.

## COUNT VIII
**Failure to Provide Sick Pay**
**(Rule 23 Class Action)**

263. Olivieri realleges and incorporates all other paragraphs by reference.

264. At all relevant times, California Labor Code § 246 was in effect.

265. Section 246 of the California Labor Code requires employers, like Puragain, to pay sick time pay to non-exempt employees at the employee's "regular rate of pay."

266. Under California law, the determination of regular rate of pay for purposes of determining sick leave pay must include the employee's hourly pay, commissions, bonuses, or other non-hourly compensation.

267. During the relevant time period, Puragain failed to provide sick pay accrual to Olivieri and the other California Class Members.

268. Olivieri's and the other California Class Members' itemized wage statements lacked any indication that the employees accrued sick pay or other "paid time off" benefits.

269. At all relevant times, Olivieri and the other California Class Members should have accumulated paid sick leave by Puragain.

270. Puragain failed to provide accrued sick leave pay to Olivieri and the other California Class Members.

271. Labor Code § 233 provides that "any employer who provides sick leave for employees shall permit an employee to use in any calendar year the employee's accrued and available sick leave entitlement, in an amount not less than sick leave that would be accrued during six months at the employee's then current rate of

entitlement[.]"

272. At all relevant times, Puragain intentionally and willfully failed to provide paid sick leave and failed to pay Olivieri and the other California Class Members their sick leave at the regular rate of pay.

273. Accordingly, Olivieri and the other California Class Members did not receive the full amount of paid sick leave to which they are entitled to receive by law, and therefore denied the right to use paid sick leave under California Labor Code § 233(a) and (c).

274. Any employer who violates Labor Code § 233 is liable to employees for the greater of one days' pay or actual damages, reasonable equitable relief and reasonable attorneys' fees and costs.

275. As a result of Puragain's unlawful acts, Olivieri and the other California Class Members have been deprived of sick leave pay in amounts to be determined at trial, and are entitled to recover such amounts, plus interest and penalties thereon, attorneys' fees, and costs.

## COUNT IX
## Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226 (Rule 23 Class Action)

276. Olivieri realleges and incorporates all other paragraphs by reference.

277. Olivieri brings his wage statement claim under the California Labor Code and Wage Order(s) as a Rule 23 class action

278. Puragain does not provide Olivieri and the California Class Members with accurate itemized wage statements as required by California law.

279. Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or his employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or his social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee .... The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

280. IWC Wage Order 4-2001(7) establishes similar wage statement requirements.

281. Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of

costs and reasonable attorney's fees.

282. Olivieri seeks to recover actual damages, costs and attorneys' fees under this section.

283. Puragain does not provide timely, accurate itemized wage statements to Olivieri and the California Class Members in accordance with Labor Code § 226(a), as well as the IWC Wage Orders.

284. The wage statements Puragain provides their employees like Olivieri and the California Class Members do not accurately reflect the actual hours worked, actual gross wages earned, premium pay earned, or actual net wages earned.

285. Puragain is liable to Olivieri and the California Class Members as alleged herein for the amounts described above, with interest thereon.

286. Olivieri and the California Class Members are also entitled to an award of attorneys' fees and costs pursuant to Labor Code § 226(e).

## COUNT X
## Waiting Time Penalties Pursuant to Labor Code §§ 201-203
## (Rule 23 Class Action)

287. Olivieri realleges and incorporates all other paragraphs by reference.

288. Olivieri brings his waiting time penalties claim under the California Labor Code and Wage Order(s) as a Rule 23 class action

289. Puragain did not provide Olivieri and the California Class Members with all their wages when due under California law after their employment with Puragain ended.

290. Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable

immediately."

291. Labor Code § 202 provides: "If an employee not having a written contract for a definite period quits his or his employment, his or his wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or his intention to quit, in which case the employee is entitled to his or his wages at the time of quitting."

292. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

293. Olivieri and some of the California Class Members left their employment with Puragain during the statutory period, at which time Puragain owed them unpaid wages.

294. These earned, but unpaid, wages derive from the unpaid overtime pay and premium pay owed by Puragain.

295. Puragain willfully refused and continues to refuse to pay Olivieri and the California Class Members all wages due and owing to them, in the form of overtime pay and premium pay, upon the end of their employment as a result of Puragain's illegal pay scheme.

296. As a result of Puragain's actions, Olivieri and the California Class Members have suffered and continue to suffer substantial losses, including lost earnings and interest.

297. Puragain's failure to pay Olivieri and California Class Members the wages due and owing constitute a violation of Labor Code §§ 201-202. As a result, Puragain is liable to Olivieri and California Class Members for all penalties owing pursuant to Labor Code §§ 201-203.

298. Additionally, Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due. Therefore, Olivieri and California Class Members are entitled to waiting time penalties, plus interest.

## COUNT XI
## Violation of California Business and Professions Code §§ 17200 *et seq.*
## (Rule 23 Class Action)

299. Olivieri realleges and incorporates all other paragraphs by reference.

300. Olivieri brings his UCL claim under the California Labor Code and Wage Order(s) as a Rule 23 class action

301. California Business and Professions Code § 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

302. Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

303. Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor

standards.

304. Beginning at an exact date unknown to Olivieri, but at least since the date of 4 years prior to the filing of this Action, Puragain has committed acts of unfair competition as defined by the UCL, be engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

a. Violations of Cal. Labor Code §§ 1182.12, 1194, and 1197, and applicable IWC Wage Order(s), pertaining to minimum wages;

b. Violations of Cal. Labor Code § 510 and applicable IWC Wage Order(s), pertaining to overtime;

c. Violations of Cal. Labor Code §§ 226.7 and 512 and applicable IWC Wage Order(s) pertaining to meal and rest periods;

d. Violations of Cal. Labor Code § 246 and applicable IWC Wage Order(s) pertaining to sick pay;

e. Violations of Cal. Labor Code § 2802 and applicable IWC Wage Order(s) pertaining to reimbursement for necessary business expenses;

f. Violations of Labor Code § 226 regarding accurate, timely itemized wage statements; and

g. Violations of Labor Code §§ 201-203 pertaining to waiting time penalties.

305. The violations of these laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, *et seq*.

306. The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of

Business and Professions Code §§ 17200, *et seq*. Among other things, the acts and practices have taken from Olivieri and the California Class Members wages rightfully earned from them, while enabling Puragain to gain an unfair competitive advantage over law-abiding employers and competitors.

307. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

308. Injunctive relief is necessary and appropriate to prevent Puragain from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

309. As a direct and proximate result of the aforementioned acts and practices, Olivieri and the California Class Members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

310. Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

311. Olivieri and the California Class Members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this Complaint.

312. Olivieri's success in this action will enforce important rights affecting the public interest and in that regard Olivieri sues on behalf of herself as well as others similarly situated.

313. Olivieri and the California Class Members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

314. Olivieri herein takes upon himself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right and it would be against the interests of justice to penalize Olivieri by forcing him to pay attorneys' fees from the recovery in this action.

315. Attorneys' fees are appropriately awarded to Olivieri pursuant to Code of Civil Procedure § 1021.5 and otherwise.

## Jury Demand

316. Olivieri hereby demands a jury trial on all claims and issues for which Olivieri is entitled to a jury.

## Prayer for Relief

WHEREFORE, Olivieri, individually and on behalf of the Commissioned Employees, requests the following relief:

1. For an order finding that Counts I and II in this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b), and that prompt notice of this action be issued to potential members of the Collective, apprising them of the pendency of this action and permitting them to assert their FLSA claims;

2. For an order equitably tolling the statute of limitations for the potential members of the FLSA Collective;

3. For an order finding that the Counts III through XI in this Complaint may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23;

4. Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA, California Labor Code, and California Business and Professions Code;

5. For a declaratory judgment that Puragain violated the FLSA, California Labor Code, California law, and public policy as alleged herein;

6. For a declaratory judgment that Puragain violated the California Business and Professions Code §§ 17200, *et seq.*, as a result of the aforementioned violations of the California Labor Code;

7. For preliminary, permanent, and mandatory injunctive relief prohibiting Puragain, their officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

8. For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

9. For an order awarding Olivieri and Commissioned Employees compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money/property, actual damages, and all other sums of money owed to Olivieri and Commissioned Employees, together with interest on these amounts according to proof;

10. For an order awarding Olivieri and Class Members all penalty wages, statutory damages, and/or civil penalties pursuant to the California Labor Code, and the laws of the State of California, with interest thereon;

11. For an order awarding reasonable attorneys' fees as provided by the FLSA, California Labor Code, California Code of Civil Procedure § 1021.5, the laws of the State of California, Federal Rule of Civil Procedure 23(h), and/or other applicable law;

12. For all costs of suit; and

13. For such other and further relief as this Court deems just and proper.

Date: December 12, 2025

Respectfully submitted,

*/s/ William M. Hogg*
William M. Hogg
**LAUREL EMPLOYMENT LAW**

*Counsel for Olivieri & the Commissioned Employees*